1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,    )
                             )
            Plaintiff        )
                             )
       vs                    )   24-CR-107
                             )
MYKAYLIAH HEVENER,           )
                             )
            Defendant        )
_____)


TRANSCRIPT OF PROCEEDINGS
*Change of Plea*
BEFORE THE HONORABLE JULIA K. MUNLEY
TUESDAY, SEPTEMBER 24, 2024; 10:00 A.M.
SCRANTON, PENNSYLVANIA


FOR THE GOVERNMENT:
    TATUM WILSON, ESQ.
    Assistant United States Attorney
    Suite 311
    235 N. Washington Avenue
    Scranton, Pennsylvania  18503


FOR THE DEFENDANT:
    JOSEPH G. PRICE, ESQ.
    Corbett Price Law
    75 Glenmaura National Boulevard
    Moosic, Pennsylvania  18507


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

_____

KRISTIN L. YEAGER, RMR, CRR
CERTIFIED REALTIME REPORTER
235 N. WASHINGTON AVENUE
SCRANTON, PENNSYLVANIA 18503

THE COURT: We are here in the matter of United States v. Mykayliah Hevener, docket number 3:24:CR-107. Would counsel please introduce themselves, starting with counsel for the Government, for the record? Go ahead.

MS. WILSON: Yes, Your Honor. My name is Tatum Wilson. I am representing the Government in this proceeding today.

THE COURT: Good morning, Ms. Wilson. For the Defense?

MR. PRICE: Attorney Joe Price on behalf of Ms. Hevener.

THE COURT: Good morning to you, and good morning to you, Ms. Hevener. I do understand that you wish to enter a plea of guilty today; is that correct?

THE DEFENDANT: Correct.

THE COURT: Now, before accepting your plea of guilty, I need to ask you certain questions to be assured that this is a valid plea. If you do not understand any of my questions or at any time if you wish to consult with your attorney Mr. Price privately, during these proceedings, please let me know, and I will certainly give you that opportunity to do so, okay?

THE DEFENDANT: Okay.

THE COURT: Because it is essential to a valid plea, ma'am, that you understand each of my questions, before you answer them, okay?

THE DEFENDANT: Okay.

THE COURT: So I must further advise you that, in a moment, you're going to be placed under oath, and if you were to answer

any of my questions untruthfully, you would subject yourself to a charge of perjury or false swearing. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay, at this time, I am going to have my courtroom deputy Mrs. Murphy swear you in. So ma'am, please, raise your right hand to be sworn.

(At this time the Defendant was sworn.)

THE COURT: Now, Ms. Hevener, these are questions that I'm required to ask you. How old are you?

THE DEFENDANT: I'm 25.

THE COURT: Do you read, write and understand the English language?

THE DEFENDANT: Yes, ma'am.

THE COURT: How far did you go in school?

THE DEFENDANT: I graduated high school.

THE COURT: In the past 24 hours, have you taken any drugs, medicines or consumed any alcoholic beverages?

THE DEFENDANT: I took a prenatal this morning.

THE COURT: Okay. And taking that medication, that does not affect your ability to understand these proceedings; correct?

THE DEFENDANT: Correct.

THE COURT: Have you ever been under the care of a doctor or in a hospital for a mental condition or mental illness?

THE DEFENDANT: No.

THE COURT: Could I be satisfied, ma'am, that you understand

4

the proceedings here today, why you are appearing before me today, and that you can respond intelligently to my questions of you?

THE DEFENDANT: Yes.

THE COURT: Mr. Price, are you satisfied that your client, the Defendant, is competent to enter a guilty plea at this time?

MR. PRICE: Yes, I am, Your Honor.

THE COURT: Now, I'm going to make a finding, Ms. Hevener, and I find that you, Mykayliah Hevener, are competent to offer a plea of guilty, that you understand the questions being asked of you, and that you can respond intelligently.

Let me ask you this. Are you satisfied with your attorney Mr. Price's representation of you?

THE DEFENDANT: Yes.

THE COURT: Have you had enough time to discuss your case with him?

THE DEFENDANT: Yes.

THE COURT: Even though, ma'am, you intend to enter a plea of guilty here today, it is my responsibility to explain to you the Constitutional Rights, had you instead decided to continue on to trial, and I'm going to do that now, okay?

THE DEFENDANT: Okay.

THE COURT: First, you do not have to enter a plea of guilty today. Do you understand that?

5

THE DEFENDANT: Yes.

THE COURT: If you were to enter a plea of not guilty or continue in your plea of not guilty, the Court would go ahead and fix a Speedy Trial date for a trial by jury on the charge or charges brought against you in the indictment. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And, at trial, through your lawyer Mr. Price, you would go ahead and select a jury consisting of twelve persons to sit as your jury to hear the facts of your case. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At any trial, you would be presumed to be innocent until the Government has proven your guilt of each of the essential elements of the crimes, the offenses charged, by competent evidence and beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You, as the person charged, would never have to prove your innocence, since the burden of proof is always and only upon the Government to prove your guilt beyond a reasonable doubt.

In fact, you would have no obligation, whatsoever, to present any evidence on your behalf. Do you understand that?

THE DEFENDANT: Yes.

6

THE COURT: At any trial, you would be entitled to be represented by counsel Mr. Price, to see and hear all of the witnesses and evidence presented against you, and through counsel, to confront and cross-examine those witnesses who might appear to testify against you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You would, also, have the right to challenge the admissibility of any evidence offered against you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, while you would have no burden to prove anything, you would, nonetheless, be entitled to have witnesses summoned to appear and testify on your behalf, if you so desired. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You would, also, have the absolute right at a trial to testify on your behalf, if you chose to do so. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In addition to the right to testify, you would, also, have the right not to testify, and if you chose not to testify, the jury would be, specifically, instructed by the Court that they could form no adverse inference whatsoever from your failure to testify, since, as I mentioned before, the burden of proof is never on you to prove that you are innocent,

but it is always and only upon the Government to prove your guilt beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Finally, Ms. Hevener, this is a criminal case, and in a criminal case, the jury's verdict must be unanimous. That means that all of the jurors would have to agree that the Government has proven your guilt beyond a reasonable doubt, before they could return a guilty verdict against you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, obviously, those Constitutional Rights that I have just gone over with you, explained to you, they contemplate a jury trial occurring, where you have pled not guilty, but if you enter a plea of guilty here today, ma'am, there will be no jury trial, and you will have waived, surrendered and given up those Constitutional Rights that I have just mentioned to you and explained to you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I must further advise you that if you enter a plea of guilty and it is accepted by the Court, you will not be allowed to withdraw or take back your plea of guilty, if you are dissatisfied or unhappy with the sentence that is imposed. Do you understand that?

THE DEFENDANT: Yes.

8

THE COURT: Now, Mr. Price, would you be so kind to place a copy of the indictment, before your client?

MS. WILSON: That was actually his copy that I had, Your Honor.

THE COURT: Thanks so much. So that's before you, Ms. Hevener, now. So have you received a copy of the indictment pending against you, that is, the written charges that are made against you in this case, and have you fully discussed those charges and the case with your lawyer Mr. Price?

THE DEFENDANT: Yes.

THE COURT: Have you had enough time to consult with your attorney relating to the charges?

THE DEFENDANT: Yes.

THE COURT: Okay. So I am going to call on the AUSA Ms. Wilson, at this time, to describe the charges brought against you, primarily, Count 1, as that appears to be the count that you are agreeing to plead guilty to.

I am, also, going to have her go through and describe the elements of the offense, as well as the maximum penalties that could be imposed, based on a plea of guilty to that count, and since there is a mandatory-minimum here, I am going to have her describe and go through that mandatory-minimum to indicate that, okay.

So while she does that, I would ask you, Ms. Hevener, to listen very closely, because I will be coming back to you with

a follow up or two, okay?

THE DEFENDANT: Okay.

THE COURT: So if you would, please, do that, Ms. Wilson. Thank you.

MS. WILSON: Certainly, Your Honor. Your Honor, Count 1, the offense to which the Defendant is pleading guilty is a violation of Title 18 United States Code Section 2251(a) Production of Child Pornography.

To be found guilty of that offense, the Government must prove each of the following elements beyond a reasonable doubt:

1. That an actual minor, that is, a real person who is less than 18 years old was depicted.

2. That the Defendant employed, used, persuaded, induced, enticed or coerced the minor to engage in sexually-explicit conduct, for the purpose of producing a visual depiction of that conduct.

3. Either, one, the Defendant knew or reasonably knew that the depiction would be mailed or transported in interstate or foreign commerce or; two, the visual depiction was produced using materials that had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer or; three, that the visual depiction was mailed or actually transported in interstate or foreign commerce.

Sexually explicit conduct is defined as actual or simulated sexual intercourse, including genital to genital, oral genital,

oral anal, whether between persons of the same or opposite sex bestiality, masturbation, sadistic or masochistic abuse or lascivious exhibition of the genitals or pubic area of any person.

Lascivious exhibition means, indecent exposure of the genitals or pubic area, usually, to incite lust.

The maximum penalty for that offense is imprisonment for a period of 30 years, a fine of $250,000, a maximum term of supervised release, the denial of certain Federal benefits and assessments totaling $5100.

The mandatory-minimum sentence that this count carries is a mandatory period of imprisonment of 15 years and, at least, a five-year term of supervised release.

THE COURT: Thank you, Ms. Wilson. So, as promised, I come back to you, Ms. Hevener. Have you listened carefully and do you understand the charge brought against you, as well as the maximum sentence that can be imposed, based on a plea of guilty, as well as the mandatory-minimum sentence that must be imposed?

THE DEFENDANT: Yes.

THE COURT: Now, has anyone persuaded, induced, threatened or coerced you, in any way, to enter a plea of guilty here today?

THE DEFENDANT: No.

THE COURT: Are you entering a plea of guilty, solely, of

11

your own free will?

THE DEFENDANT: Yes.

THE COURT: Ma'am, can I be satisfied that the decision to enter the plea of guilty is yours and yours alone?

THE DEFENDANT: Yes.

THE COURT: Mr. Price, let me ask you. Is there any doubt that your client Mykayliah Hevener is pleading guilty freely, voluntarily, without threat, coercion, intimidation or persuasion?

THE DEFENDANT: No, Your Honor.

THE COURT: Now, if you would be so kind, Mr. Price, to place the plea agreement before your client. Thank you.

So, ma'am, there has been a plea agreement entered into between you and the Government in this case; correct?

THE DEFENDANT: Yes.

THE COURT: I'm going to be asking you some questions about your knowledge and understanding of the plea agreement, and I remind you that it is always in your best interest to answer my questions directly and truthfully concerning your understanding of the plea agreement, because you will not be allowed at a later time to claim, contend or argue that you did not understand any of the terms of the plea agreement. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, have you seen this plea agreement before?

12

It contains 39 pages and 45 paragraphs.

THE DEFENDANT: Yes.

THE COURT: I'm going to take you to Page 39, the last page. Are you there?

THE DEFENDANT: Yes.

THE COURT: Do you have water in front of you, too? Just so you have some water.

THE DEFENDANT: Yes, thanks.

THE COURT: How about counsel, do you need a water?

MR. PRICE: No, Your Honor.

THE COURT: How about Ms. Wilson?

MS. WILSON: I'm fine, Your Honor. Thank you.

THE COURT: Great. So that, in fact, is the signature page under, Acknowledgments, and right below, Acknowledgments, it reads;

I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it.

Right below there, there's a date line on the left, and it's handwritten September 12, 2024. Directly across from there is a signature line with your name typed up and a signature on the line.

Ma'am, is that, in fact, your signature?

THE DEFENDANT: Yes.

THE COURT: And what I read above, is that, in fact, the

13

case?

THE DEFENDANT: Yes.

THE COURT: Now, below there, it indicates;

I am the Defendant's counsel. I have carefully reviewed every part of this agreement with the Defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Again, dated the same date, September 12, 2024 with a signature line. Mr. Price, that is your signature; correct?

MR. PRICE: Yes, Your Honor.

THE COURT: And what I read above, is that, in fact, the case?

MR. PRICE: Yes, Your Honor.

THE COURT: Great. Now, ma'am, have you read and reviewed the entire plea agreement, yourself?

THE DEFENDANT: Yes.

THE COURT: Any questions you had, did you ask your attorney?

THE DEFENDANT: Yes.

THE COURT: Did he answer those questions to your satisfaction?

THE DEFENDANT: Yes.

THE COURT: Did you have sufficient time to go over each part of the plea agreement with your counsel?

14

THE DEFENDANT: Yes.

THE COURT: Do you understand all of the contents of the plea agreement?

THE DEFENDANT: Yes.

THE COURT: And do you have any questions, whatsoever, concerning the contents of the plea agreement?

THE DEFENDANT: No.

THE COURT: Is everything in the plea agreement acceptable to you?

THE DEFENDANT: Yes.

THE COURT: Now, at this point, I am going to call on Ms. Wilson, and I'm going to ask her to summarize the contents of the plea agreement. I would ask you, Ms. Hevener, to please listen very carefully as she does so, because, afterwards, I'll be coming back to you to ask you questions about it, okay?

THE DEFENDANT: Okay.

THE COURT: Great. So, Ms. Wilson, if you would be so kind to do that?

MS. WILSON: Yes, Your Honor. Your Honor, the Defendant agrees to plead guilty to Count 1 of the indictment, which charges her with a violation of Title 18 United States Code Section 2251(a) Production of Child Pornography.

At the time of the plea, the Defendant will admit to being guilty to the offense charged in that count. After sentencing, the United States will move for dismissal of any remaining

count of the indictment.

Count 1 carries a mandatory-minimum period of 15 years and, at least, a five-year term of supervised release.

The Court must order that the Defendant cooperate in the collection of a DNA sample, if the collection of the sample is so authorized by law.

The Defendant understands that the Court may impose a fine pursuant to the Sentencing Reform Act of 1984.

As stated in Paragraph 9, the Defendant understands that the Court will impose a special assessment of $100. If the Defendant is convicted of a human trafficking, sex trafficking or child pornography, child sexual exploitation offense, as she is pleading to before this Court, should the Court find that she is not indigent, an additional special assessment of $5,000 will be imposed.

As outlined in Paragraph 12, the Defendant and counsel for both parties agree that the United States Sentencing Commission Guidelines will apply to the offense to which the Defendant is pleading guilty. The Defendant understands that the Sentencing Guidelines are advisory and are not binding on this Court.

If the Defendant can adequately demonstrate recognition and affirmative acceptance of responsibility to the Government, as required by the Sentencing Guidelines, the Government will recommend that she receive a two or three-level reduction in the Defendant's offense level for acceptance of responsibility.

16

As outlined in Paragraph 14, at the time of sentencing, the United States reserves the right to make a recommendation that it considers appropriate, based upon the nature and circumstances of the case, the Defendant's participation in the offense, and we, specifically, reserve the right to recommend a sentence up to and including the maximum sentence provided by law.

Paragraph 29 states that the Defendant understands that the Court is not a party to and is not bound by the agreement or by any recommendations made by the parties. Thus, the Court is free to impose upon the Defendant the maximum sentence provided by law.

If the Court imposes a sentence with which the Defendant is dissatisfied, she will not be permitted to withdraw any guilty plea for that reason alone nor will she be permitted to withdraw any guilty plea, should the Court decline to follow any recommendations by any of the parties to the agreement.

Your Honor, this is an offense that triggers registration requirements that are outlined in Paragraph 34 of the agreement.

By way of summary, the Defendant understands that the Court, as a condition of supervised release, must order her to comply with all Sex Offender Registration requirements, under the Sex Offender Registration and Notification Act.

The Defendant must register and keep her registration

17

current and accurate in each of the following jurisdictions:

The location of her residence, the location of employment, the location of any school she may be attending. She understands that such information must be updated no later than three business days of any change. A failure to comply with these and other obligations may subject her to prosecution under Federal or State law.

She acknowledges that one possible consequence of a guilty plea is that the Court may determine, after the completion of a sentence, that she is a sexually-dangerous offender and may commit the Defendant to a medical facility for treatment.

Paragraph 36 states that the Defendant agrees to interpose no objection to the Government's transferring evidence or providing information concerning the Defendant or this offense to other State or local authorities or agencies, pursuant to the purpose of child custody proceedings relating to this Defendant.

This agreement, also, contains a direct appeal waiver, which is outlined in Paragraphs 37 and 38 of this agreement. In summary, it states that;

The Defendant is aware of her right to appeal a judgment of conviction and sentence and of her right to appeal the sentence imposed. Acknowledging all of this, the Defendant knowingly waives the right to appeal the conviction and the sentence.

Lastly, Your Honor, Paragraph 43, the Defendant

18

acknowledges that she has discussed this case and this agreement, in detail, with her attorney. He has advised her of all the legal rights pertaining to her case, and she is satisfied with the legal services and advice provided to her by her counsel.

Your Honor, that summarizes the pertinent portions of the plea agreement before this Court.

THE COURT: Ms. Wilson, I would just ask you, would you summarize, just cover, briefly, the Restitution paragraphs.

MS. WILSON: Certainly, Your Honor.

THE COURT: On Pages 18 through 24.

MS. WILSON: Your Honor, the paragraphs detailing Restitution begin on Page 18, which outlines the victim's rights in this case.

With respect to Restitution, that starts on Paragraph 22, and the Defendant acknowledges that, pursuant to the Mandatory Restitution Act of April 24, 1996, which is codified at United States Code Section 3663(a), the Court is required in all instances to order full restitution for all victims for the losses these victims have suffered, as a result of the Defendant's conduct.

Additionally, the Defendant, also, agrees that the Government will seek and the Court may impose an Order of Restitution as to victims of the Defendant's relevant conduct.

Your Honor, the Defendant further agrees to pay restitution

equal to the loss caused to any identifiable victim of the offense of conviction, including any relevant conduct, pursuant to any applicable Statute, including Title 18 United States Code Section 2259.

That is outlined, Your Honor, in Paragraph 24 of the plea agreement.

THE COURT: Okay, thanks, Ms. Wilson. So, as promised, Ms. Hevener, I come back to you.  Have you listened carefully and do you agree with the Government's summary of the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Mr. Price, do you agree with the Government's summary of the plea agreement?

MR. PRICE: Yes, Your Honor.

THE COURT: Ms. Hevener, is your understanding of the plea agreement the same as that contained in the written plea agreement?

THE DEFENDANT: Yes.

THE COURT: If anything contained in the Government's summary of the plea agreement differs, in any way, from the actual written words in the plea agreement, do you understand that it is the actual written words of the plea agreement that control?

THE DEFENDANT: Yes.

THE COURT: Now, ma'am, has anyone made any promise,

20

representation, agreement or understanding with you, other than what is contained in the plea agreement?

THE DEFENDANT: One moment, Your Honor.

THE COURT: Sure.

(At this time the Defendant conferred with counsel.)

MR. PRICE: Okay, Your Honor.

THE COURT: Do you need that repeated?

THE DEFENDANT: No, my answer is, No. My apologies.

THE COURT: Has anyone made any out-of-court promise, representation, agreement or understanding with you, which would require you to respond untruthfully to my questions of you concerning your understanding of the terms of the plea agreement?

THE DEFENDANT: No.

THE COURT: Do you understand, ma'am, that you are bound by the answers that you give me today, and this is so despite what anyone else may have said to you?

THE DEFENDANT: Yes.

THE COURT: You may not, at a later time, contend or argue that there has been any promise, representation, agreement or understanding made to you by any person, either in court or out of court, other than what is placed on the record here today in open court. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, I am going to make a finding, and I find

that the Defendant in this matter Mykayliah Hevener has entered into the plea agreement knowingly, intelligently and voluntarily of her own free will, understanding its contents, and after having had adequate time to discuss it with her counsel.

Now, Congress has passed a law that is Title 18 Section 3553 of the United States Code that sets forth a list of considerations or factors that a Judge is required to consider in every criminal sentencing.

Additionally, the United States Sentencing Guideline Commission has issued advisory guidelines that a Judge must consider in determining an appropriate sentence in a criminal case. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Have you and your attorney had an opportunity to discuss how the Section 3553 factors, the Statute and the Sentencing Guidelines may apply to your case?

THE DEFENDANT: Yes.

THE COURT: The Court will not be able to determine the appropriate sentence in your case until after a Pre-Sentence Report has been completed by the Probation Office, and you, your counsel and the United States Attorney have all had an opportunity to review the Pre-Sentence Report and, if necessary, challenge the facts or conclusions reported by the Probation Officer. Do you understand that?

22

THE DEFENDANT: Yes.

THE COURT: The sentence that I impose may be different from any estimate that your attorney may have given you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the Court is not a party to this agreement?

THE DEFENDANT: Yes.

THE COURT: Do you understand that I am not bound by any recommendations on sentence agreed to by your counsel and the Government's counsel?

THE DEFENDANT: Yes.

THE COURT: Do you understand that that includes any agreement by the Government not to oppose your attorney's requested sentence, and that you could still receive the maximum sentence under the law?

THE DEFENDANT: Yes.

THE COURT: Even after the recommended guideline sentence that applies to your case has been determined, Judges often have the authority to impose a sentence that is more severe or less severe than that which is recommended by the guidelines. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If the sentence is more severe than you expected it to be, you will still be bound by your plea of guilty here

23

today and you will not have the right to withdraw or take back your plea of guilty. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, under some circumstances, you and the Government may have the right to appeal any sentence that I impose. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: However, here, as part of the plea agreement, you have waived this right to appeal. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, I already addressed with you the indictment, but if you could put that back in front of her, Mr. Price, that would be great.

So, ma'am, have you, actually, read Count 1 of the indictment that you are pleading to?

THE DEFENDANT: Yes.

THE COURT: And do you understand what that count in the indictment charges you with doing?

THE DEFENDANT: Yes.

THE COURT: I'm, now, going to be asking Ms. Wilson or Ms. Berti what the Government would present, if the case did go to trial, as well as what the Government is required to present, if the case went to trial.

I'm going to ask you, Ms. Hevener, to listen very, very carefully as the Government's attorney does so, outlining the

24

proof at trial, because, afterwards, I'm going to come back to you, and I'm going to ask you one of the most important questions of all so far today, and that is, now that the Government -- now, that you have heard the Government's statement, do you agree that the Government's statement is true and correct, okay?

THE DEFENDANT: Okay.

THE COURT: So listen very carefully. Counsel.

MS. WILSON: Thank you, Your Honor. Your Honor, had this case proceeded to trial, the Government would have submitted evidence that would have met all of the elements previously outlined during this colloquy beyond a reasonable doubt.

And prior to today's hearing, Defendant and her counsel and the Government did enter into a stipulation as to the factual basis for the guilty plea. This was memorialized in a written filing, which was filed under seal. If I may reads those facts into the record at this time?

THE COURT: Go right ahead.

MS. WILSON: In March of 2023, the National Center for Missing and Exploited Children reported a cyber tip involving a Verizon user who was engaging in the receipt and/or distribution of child pornography and/or child exploitation material images.

The information contained in the cyber tip was transmitted to the New York State Police who served a subpoena upon

25

Verizon, in an attempt to find the associated account holder. Verizon provided that the account holder was a woman residing in Tipton, Iowa. The Tipton Police Department received this information in October of 2023, and in December of 2023, they made contact with the woman.

The woman advised that the Verizon number at issue was associated with a phone that was being used by her boyfriend. The woman facilitated bringing her boyfriend to the Tipton Police Department to speak with law enforcement.

The boyfriend gave law enforcement consent to search his cell phone. A forensic download of the phone was conducted and provided to the Tipton Police Department on March 26 of 2024. Contained within the phone were videos that are screen recordings of a Snapchat conversation between a man and a woman who was subsequently identified as Defendant Hevener.

The videos begin with Defendant undressing. In the videos, she is dancing, posing, rubbing her breasts, buttocks and trying to appear sexy for the male viewer. Toward the beginning of the videos, she chases a toddler around. While she is nude and with the child, she says to the male viewer, I wish you could see the whole video; i.e., the portions of herself nude that, also, capture the child.

Throughout the videos, it is clear that the male viewer is masturbating, and, at times, shows his erect penis. Defendant picks up the child, at one point, and holds him briefly, while

26

swinging him around. The viewer can hear the male ask Defendant, quote, Did he just touch your tit? End quote.

The viewer, also, can hear the male ask Defendant, quote, Will you pick him up? End quote. The Defendant picks up the toddler and holds him to her chest, at which point, the toddler begins grabbing and playing with Defendant's breasts.

The toddler proceeds to play with Defendant's breasts for a few minutes, and she tells the child, quote, You're going to be a titties boy, end quote. She, then, puts the child back down and tells the male viewer, quote, I got him to play with my titties. There you go, big boy. End quote.

The videos, also, contain graphic depictions of Defendant holding the phone close to her vagina masturbating, constantly rubbing her breasts, and showing herself from behind simulating intercourse. At no point while Defendant is engaging in adult sex acts, however, does the male viewer ejaculate.

Towards the end of the incident, the male viewer says something to Defendant and she smirks. Based on the context of the video, it is clear that he asks Defendant to remove the child's shorts and diaper, which she immediately does. She carries the child into frame and undresses him.

Defendant then swings him around and holds him nude in front of the camera. At one point, she tells the child that what he is touching is her pussy. She continuously attempts to hold the baby center frame, with the focus on the child's

27

penis, propping him up on her knee so that the male has a close-up direct view of the baby's genitals. She, finally, puts the baby down and tells the man, quote, He's over it, sorry. End quote.

Within a minute or so of Defendant holding the baby up for the male to view his genitals, the male finally ejaculates. It is clear throughout the entire interaction that the male's primary focus and primary sexual interest is on the child. Defendant facilitates the male's sexual gratification by attempting to get the child to touch her and by giving the male clear, unobstructed views of the baby's penis.

Defendant is, also, depicted in another video holding the baby in front of the phone. She is naked, the baby is naked, she is rubbing the baby's penis asking the baby how he likes touching his penis. The baby squirms, Defendant puts him down, the Defendant says to the camera, I tried.

In addition to the video, there is still images from the phone that show the baby in a hot bathtub, leaned back in a bath seat, while Defendant is holding his penis in a pincher grasp, presumably, attempting to masturbate to him. There are, also, stills that show screen shots of Defendant reclined naked on a couch, her vagina visible, with the baby standing next to her with his hands near her vagina.

FBI conducting an interview with Defendant where she relayed the following things:

She admitted to being in a long-term on-again/off-again online relationship with the male viewer. She admitted that he was interested in child pornography, incest and child sexual abuse material. She admitted to making videos and images of the child and sharing them with the male at his request.

She admitted that she was aware the male was in online forums to trade child pornography and admitted that he often sent her child pornography. Defendant recalled that videos created for the male had likely been made sometime in the summer of 2023.

The Defendant said that nearly all the videos were sent from her home in the Middle District of Pennsylvania, minus one instance where she sent something from her mother's house, also, in the Middle District of Pennsylvania.

The depictions and videos in this case meet the Statutory definition of sexually explicit conduct, as it is defined in Title 18 United States Code Section 2256 subsection 2.

Defendant knew that the sexually explicit conduct she was creating would be transported and transmitted using a means of interstate and foreign commerce, specifically, a cell phone, and it was so transmitted.

THE COURT: Thanks, Ms. Wilson. So I come back to you, Ms. Hevener, as promised. Do you agree that the Government's statement is true and correct?

THE DEFENDANT: Yes.

THE COURT: Now, ma'am, do you understand that the charge you are pleading to is a felony?

THE DEFENDANT: Yes.

THE COURT: Do you understand if you plead guilty and your plea is accepted, you will be adjudicated guilty, and that adjudication may deprive you of valuable civil rights, such as, the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any dined of firearm?

THE DEFENDANT: Yes.

THE COURT: Do you understand that a consequence of pleading guilty and the resulting conviction may be and, in fact, is already listed in the plea agreement, that you have to submit to a DNA sampling?

THE DEFENDANT: Yes.

THE COURT: Do you understand only if applicable, do you understand that your guilty plea may affect your immigration status, if that is applicable?

THE DEFENDANT: Yes.

THE COURT: Ma'am, have you discussed with your counsel the possible consequences of pleading guilty?

THE DEFENDANT: Yes.

THE COURT: Any questions you had, did he answer those questions to your satisfaction?

THE DEFENDANT: Yes.

THE COURT: Before I ask the Defendant more formally how she pleads, does counsel for the Defendant or counsel for the Government believe there are any other areas for the Court to cover with the Defendant or any other areas, whatsoever? Mr. Price?

MR. PRICE: No, Your Honor.

THE COURT: Ms. Wilson?

MS. WILSON: No, Your Honor.

THE COURT: Thank you. So, ma'am, with all of the information we have reviewed today, is it still your desire to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Could I be satisfied that you are guilty as charged?

THE DEFENDANT: Yes.

THE COURT: Let me ask you then, more formally, ma'am, how do you plead to Count 1 of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: So, ma'am, I have a plea form in front of me, and it reads, at the top, it is entitled, Motion to Withdraw Plea, it reads;

Now, this 24th day of September 2024, Mykayliah Hevener, Defendant in the above-captioned matter, after consultation and assistance of her counsel, moves the Court to be permitted to

withdraw her plea of not guilty and to enter a plea of guilty to Count 1 of the indictment.

There's a signature line with your name typed up, ma'am. Is that your signature on the signature line?

THE DEFENDANT: Yes.

THE COURT: Very good. On the bottom it indicates, Plea.

Now, this 24th day of September 2024, Mykayliah Hevener withdraws her plea of not guilty and pleads guilty to Count 1 of the indictment in the above-captioned matter.

There is a signature line, your name typed up, and a signature on the line. Ma'am, is that your signature?

THE DEFENDANT: Yes.

THE COURT: Very good. I am, now, going to grant your Motion to Withdraw your earlier plea of not guilty, and I am going to accept your plea of guilty.

I'll give you the disclosure date for the Pre-Sentence Report, and that will be November 19th, 2024. Sentencing in this matter will be December 16, 2024 at 10:00 a.m.

Anything further from the Government, before we finish today?

MS. WILSON: No, Your Honor.

THE COURT: Very good. One more thing. Yes, I have the Acknowledgment, sorry, Acknowledgment of Rights Waived by the Guilty Plea. Five pages. Nine paragraphs. I'm on the last page.

It indicates;

32

I fully understand the foregoing statement consisting of five typewritten pages dated today, September 24th, 2024, with the signature line, your name typed up, Ms. Hevener, is that your signature?

THE DEFENDANT: Yes.

THE COURT: Below there, it indicates, I am the Defendant's counsel and I have carefully reviewed every part of this statement with the Defendant. Again, today's date. Mr. Price, that is your signature?

MR. PRICE: Yes, Your Honor.

THE COURT: Very good. I'm going to, also, give that to my courtroom deputy for filing. I think I already did give the sentencing date, you have that.

And nothing further from the Government; correct?

MS. WILSON: Correct, Your Honor.

THE COURT: Okay, anything further, Mr. Price, on behalf of the Defendant?

MR. PRICE: No, Your Honor.

THE COURT: Okay, very good. Thank you very much. We are concluded for today. Thank you.

(At this time the proceedings were adjourned.)

33

C E R T I F I C A T E

I, KRISTIN L. YEAGER, Official Court Reporter for the United States District Court for the Middle District of Pennsylvania, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the within-mentioned proceedings had in the above-mentioned and numbered cause on the date or dates hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my supervision.

S/Kristin L. Yeager
KRISTIN L. YEAGER, RMR,CRR
Official Court Reporter

REPORTED BY:

KRISTIN L. YEAGER, RMR,CRR
Official Court Reporter
United States District Court
Middle District of Pennsylvania
P.O. Box 5
Scranton, Pennsylvania  18501

(The foregoing certificate of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)