# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **NO. 3:24-cr-00107** |
| | : | |
| **V.** | : | |
| | : | **(JUDGE MUNLEY)** |
| **MYKAYLIAH HEVENER** | : | |
| **Defendant** | : | |

## DEFENDANT MYKAYLIAH HEVENER'S
## SENTENCING MEMORANDUM

### I.   Introduction

The Defendant, Mykayliah Hevener, submits this sentencing memorandum in an effort to demonstrate that the facts and circumstances of her case require consideration of, and ultimately provide an ample basis for a substantial downward variance from the advisory guideline range.  For the reasons outlined herein, Ms. Hevener submits that the statutory mandatory minimum sentence of fifteen (15) years incarceration is quite "sufficient but not greater than necessary" to achieve the sentencing goals set forth in the Sentencing Reform Act. 18 U.S. C. §3553(a)(2). But before I tell you that story, I have to tell you this story.

### a.  United States of America v. Michael Robert Heinrich

The following is taken directly from Senior United States District Judge David Stewart Cercone's opinion from the case of USA v. Michael Robert

Heinrich, U.S. District Court for the Western District of Pennsylvania, Docket No. 1:17-CR-0013:

> In January and February of 2017, [Michael Heinrich] was doing some painting at the house of a couple who considered defendant to be a close family friend. The couple, J.C. and M.C., had two very young female granddaughters, E.C. and L.C..E.C. was approximately 5 years-of-age and L.C. was approximately 3 years of age at the time. On February 14, 2017, brought the young girls Valentine's Day gifts and spent time painting in the basement. The girls were there with him. While defendant was painting, M.C. was upstairs preparing dinner and J.C. was still at work. Thereafter, defendant departed.  M.C. and J.C. observed defendant with a camera on that date.
> At the evening meal, E.C. revealed to her parents that while she was sitting on the couch in the basement playroom, defendant tried to pull her pants down, but she told him "no." Defendant then pulled her pants off anyway and took photographs of her genitalia and buttocks. M.C. and J.C. reported these revelations to the Pennsylvania State Police. On February 20, 2017, State Troopers interviewed defendant. He acknowledged that he was at the residence on Valentine's Day but denied taking nude photographs of the children. He stated he took pictures of them in their clothes. He also disclosed that he had wiped E.C.'s butt because it was dirty from defecating but he did not touch her vagina. He also admitted that he had downloaded nude pictures of other underage children while on the internet.
> During the interview defendant agreed to and executed a waiver of rights and consent to search form. A laptop computer, a tower computer, two cameras and a cellular telephone were seized.
> On May 22, 2017, the investigating officers obtained a warrant to search the seized items. A forensic examination of the items uncovered several images of E.C. in various positions with her vaginal area exposed and the focus of the image. Several depicted a man's hand spreading the buttocks and vaginal area of E.C. Others depicted a man's hand holding E.C.'s leg and body in position to capture the exposed image of her genital area. Another depicted L.C. on her knees and bent over with her

>backside and vaginal area exposed. The metadata from these images indicates they were taken on February 14, 2017.
>A 24-second video clip also was discovered. In the video, E.C. is wearing a one-piece pajama that had been unzipped. She is positioned so her chest and vaginal area are in focus and exposed. A man's voice can be heard saying "stay there, you're fine, just fine. You're very pretty, stay there." The government indicates the man speaking is defendant. Four still images were also discovery with E.C. in the one-piece pajama. Her chest and vagina are exposed in the images. The metadata from all these images indicates they were taken on January 16, 2017.
>The forensic examination further revealed pictures of other very young children. One has an infant on a changing table with an adult male's erect penis placed on her vaginal area. Another depicts a prepubescent girl dressed in a blue outfit and standing in a modeling pose, exposing her chest and vaginal area. The label "LS Models" is embedded in this image. Another depicts a naked minor female with her genitals exposed and using a sex toy. [citation removed].

Mr. Heinrich's was arrested on May 25, 2017. A Federal Grand Jury indicted Mr. Heinrich's on June 13, 2017, charging him with various violations of Federal law, including multiple violations of 18 U.S.C. §2251(a). (WDPA, Docket No. 1:17-CR-0013, Doc.3). On June 4, 2021, just three (3) days before his scheduled jury selection date, Mr. Heinrich filed a motion to change his plea to three (3) counts of violation of 18 U.S.C. §2251(a). (Docket No. 1:17-CR-0013, Doc. 143).

On these three (3) counts, Michael Robert Heinrich was sentenced to 18 U.S.C. §2251(a)'s mandatory minimum of fifteen (15) years incarceration. (Docket No. 1:17-CR-0013, Doc. 148).

The details provided of the USA v. Heinrich case are not in any way meant to deflect or distract the court's attention from Ms. Hevener's conduct; in fact, this is the last thing Ms. Hevener would want done on her behalf because she is the one who, since being confronted with her actions, has acknowledged the vile nature of her conduct, accepted responsibility for that conduct, and accepts that there are significant consequences for that conduct.

Rather, the case of USA v. Heinrich is presented as a case that falls in the "heartland" of the offense type that the guidelines were designed to account for, whereas the conduct and circumstances of Ms. Hevener's offense are such that her offense falls outside of that "heartland." USSG Ch.1, Pt.A(1)(4)(b). Further, Heinrich can aptly aid this Honorable Court in crafting a sentence that is "sufficient but not greater than necessary" to achieve the sentencing goals in set forth in the Sentencing Reform Act, 18 U.S. C. 3553(a)(2). Kimbrough v. United States,128 S. Ct. 558, 570 (2007).

## II.     The Advisory Nature of the Sentencing Guidelines

The Sentencing Guidelines are no longer mandatory, but rather provide a "starting point" for the Court's sentencing decision. Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 596 (2007); accord Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 867 (2007). While district courts are still required to consider the Guidelines, they are no longer mandatory and the district court should "tailor the

sentence in light of other statutory concerns, as well." Kimbrough, *supra*, 128 S.Ct. at 570 (2007). Therefore, and necessarily, the District Court should consider all of the factors set forth in 18 U.S.C. §3553(a). Gall, *supra,* 128 S.Ct. at 596. Again, the guiding principle of section 3553(a) is to arrive at a sentence that is "sufficient, but not greater than necessary" to accomplish the other sentencing goals set out in the statute. 18 U.S.C. § 3553(a).

    The Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and its progeny, now require district courts to consider both the U.S. Sentencing Guidelines range and the factors contained in 18 U.S.C. § 3553(a) when determining a criminal defendant's ultimate sentence. District courts are instructed to first correctly calculate the guideline range and then consider the factors in §3553(a) to determine whether a sentence within the Guideline range is appropriate or whether a variance from the Guideline range is warranted. In Nelson v. United States, 555 U.S. 350, 129 S.Ct. 890, 892, 172 L.Ed.2d 719, 721 (2009), the Supreme Court reiterated that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable ... **[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply**." (Citing Rita v. United States, 551 U.S. 338, 351 (2007) (emphasis added). And in Gall, *supra,* the Court reiterated that district judges, in considering how the various statutory sentencing factors apply to

an individual defendant, "may not presume that the Guidelines range is reasonable." Id., at 38, 128 S. Ct. at 596-97, 169 L. Ed. 2d at 457. *See also* Spears v. United States, 129 S. Ct. 840, 172 L. Ed. 2d 596 (2009) (explaining that the Sentencing Guidelines cannot be used as a substitute for a court's independent determination of a just sentence based upon consideration of the statutory sentencing factors).

The primary directive of §3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of federal sentencing. A sentencing court must therefore impose the minimally sufficient sentence that accomplishes those statutory purposes. Of course, the "reasonableness standard" only applies to those cases that are reviewed on appeal and that standard should not be confused with the duty of the District Court to comply with § 3553 factors. *See,* United States v. Tomko, 562 F.3d 558 (3d Cir. Pa. 2009). As other Courts of Appeals have noted:

> [A] district court's job is not to impose a "reasonable" sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task.

United States v. Davenport, 445 F.3d 366,370 (4th Circuit 2006). *See also* Rita v. United States, 551 S.Ct. at 350 (stating that any presumption of reasonableness for Guidelines sentence applies only on appeal).

In the Third Circuit:

> A district court must begin the process by first calculating the applicable Guidelines range. After that initial calculation, the court must then rule on any motions for departure and, if a motion is granted, state how the departure affects the Guidelines calculation. Finally, after allowing the parties an opportunity for argument, the court must consider all of the § 3553(a) factors and determine the appropriate sentence to impose, which may vary from the sentencing range called for by the Guidelines. See U.S. v. Tomko, id, 567, quoting United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008). Id. at 194-95.

And it has been clearly recognized in this Circuit even where a Court does not grant a "departure" it nonetheless may substantially mitigate a sentence based upon those factors now termed a "variance." As the Court held in Booker, *supra,* at 259, departures are not available in every case, but this in no way confines the district court to a sentence in or near the applicable guideline range. In Tomko the District Court did not grant Tomko a "downward departure" but rather took into account various 3553(a) factors when it ultimately imposed a period of probation. *See*, U.S. v. Vampire Nation, 451 F. 3d 189, 195 n. 2 (3d Cir. 2006) (explaining the distinction between departures and variances). *See also*, United States v. Hall, 965 F.3d 1281, 1295 (11th Cir. 2020) ("Although they may lead to the same result (a sentence outside the advisory guideline range) a variance and a departure reach that result in different ways."); USSG §1B1.1, comment. (backg'd.) ("If… the court imposes a sentence that is outside the guidelines framework, such a sentence is considered a 'variance.'"). Further, "[t]he district court's authority to impose a

variance is discretionary and stems from 18 U.S.C. §3553(a)." United States v. Crosby, 397 F.3d 103, 111 n.9 (2d Cir. 2005).

Put more succinctly, this Honorable Court is legally required to use a variance to depart from the advisory guideline sentence range when the §3553(a) factors require it to do so. *See* Rita v. Unites States, 551 U.S. 338, 344 (2007) (sentence below the guideline range could take two forms: a departure within the guidelines' framework, or a sentence **independent of the guidelines by application of 18 U.S.C. §3553(a)**). As we will see, Ms. Hevener's case is one of those cases where the §3553(a) factors require mitigation from the sentencing guidelines using a variance.

### III. §3553(a) Factors

#### a. §3553(a)(1) – The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

A defendant's history and characteristics, including the defendant's lack of a criminal history and various personal characteristics have led many courts to vary from the advisory guideline range. *See* United States v. Autery, 555 F.3d 864, 874–75 (9th Cir. 2009) (affirming downward variance in child pornography case because in part the defendant did not fit the profile of a pedophile, had no history of substance abuse, no interpersonal instability, was motivated and intelligent, and had continuing support of his family); United States v. McBride, 511 F.3d 1293, 1298 (11th Cir. 2007) (per curiam) (affirming downward variance where the

district court found the defendant has a significant history of abuse and abandonment by his parents).

Senior United States Probation Officer Mark A. Campetti did an upstanding job presenting Ms. Hevener's history and characteristics in the Presentence Report, but some points require highlighting. Namely that this represents Ms. Hevener's first time appearing before any court as a Defendant. She has never been charged with another crime let alone convicted. She has however herself been the victim of heinous sexual abuse multiple times beginning at the age of 11. (PSR, ¶42). Her biological parents abandoned her at birth, leaving her to be raised by foster parents, however her biological mother exacerbated Ms. Hevener's trauma by routinely coming in and out her life, generally under the influence of toxins and subjecting Mykayliah to a whirlwind of emotions and experiences that no child should be forced to go through. Steady relationships were never present in Ms. Hevener's life and this made her extremely susceptible to Benjamin Egli's coercive ways.

Ms. Hevener's history and characteristics are factors that warrant this Honorable Court varying substantially from the guidelines.

Courts have also varied downward to reflect the nature of the offense. *See* United States v. Pauley, 511 F.3d 468, 474–75 (4th Cir. 2007) (affirming downward variance based in part on findings that the defendant was less culpable than others seeking to produce child pornography). Here, Ms. Hevener is not

accused of overt-sexual conduct with the victim child such as oral sex, masturbation, intercourse, or the like. The vast majority of the sexual activity Ms. Hevener live streamed and that Benjamin Egli surreptitiously recorded was of herself naked, masturbating, and what have you. The production charge stems from her acquiescing to Benjamin Egli's request that she remove the child's diaper and show him the child's genitals, which she admittedly did knowing it was for Benjamin Egli's sexual gratification, hence why she took responsibility for and pled guilty to the charge of production of child pornography.

Ms. Hevener did not have one piece of child pornography on stored on any of her electronic devices; she is not a pedophile. As the father of the victim child succinctly puts it "[t]his is completely out of character [for Ms. Hevener]…I believe it was an accident, but at the same time, she should have known better." (PSR, ¶15). Ms. Hevener realizes she should have known better, accepts that she must pay the consequences, and has shown that not only is she capable of learning from her mistake, but that she wants to so that she can be a better mother to her children.

This Honorable Court should vary from the guidelines here and impose the statutory mandatory minimum which appropriately reflects the nature of the offense.

    b. **§3553(a)(2) – The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to**

**Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; to Protect the Public from Further Crimes of the Defendant; and to Provide the Defendant With Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

This factor weighs heavily in favor of the court varying significantly from the guidelines. Courts have varied downward under section 3553(a)(2) varying where the defendant's lack of a criminal history served as proof that they could be deterred from future crimes through means other than imprisonment, i.e. supervised release, counseling, treatment, and other means to reduce the likelihood of recidivism. *See* United States v. Grossman, 513 F.3d 592, 597 (6th Cir, 2008).

Between April 30, 2024 and July 3, 2024, Ms. Hevener on her own accord has completed 155 total learning hours, including 151 completed course hours that earned her 39 certificates of completion in various courses such as "Preparing for Success After Prison", "The Transformation Journey", and "Learning How to be a Better Parent" to name a few. No one made her undertake these efforts. She did so because she never wants to make the a similar mistake that could put her at risk of breaking the law again once she is eventually released from prison.  Based on the §3553(a)(2) factor, the just punishment for Ms. Hevener's crime is the statutory mandatory minimum of fifteen (15) years incarceration.

### c. §3553(a)(3) – The Kinds of Sentences Available

A statutory mandatory minimum of fifteen (15) years incarceration applies in this case. Ms. Hevener knew that fifteen (15) years incarceration would be her *best* case scenario if she pled guilty to the charged offense, yet she did it anyway fully accepting responsibility for her actions because she realizes what she did was horribly wrong. This is in stark contrast to so many other individuals charged with 18 U.S.C. 2251(a) violations and similar charges (i.e. Mark Robert Heinrich who is serving the mandatory minimum sentence). Ms. Hevener's acceptance should be given great weight when this court considers its final sentence as it is proof of her contrition and her low odds of recidivism of any kind.

### d. §3553(a)(4)(5) – The Guideline Sentence and Any Pertinent Statement Issued by the Sentencing Commission

The applicable guideline range in Ms. Hevener's case is LIFE. However, the applicable statute only allows for a maximum term of imprisonment of thirty (30) years, thus the guideline range is thirty (30) years. Thirty (30) years imprisonment is not just punishment for this crime.

### e. §3553(a)(6) – The Need to Avoid Unwarranted Disparity Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

As stated above, Mark Robert Heinrich was sentenced on his three (3) counts of violation of 18 U.S.C. 2251(a) to the mandatory minimum of fifteen (15) years incarceration, all sentences to run concurrently for the heinous conduct that

he was guilty of. Sentencing Ms. Hevener to the mandatory minimum sentence of fifteen (15) years incarceration is paramount to avoiding an unjust and unwarranted disparity among defendants with similar records who have been found guilty of similar conduct (although I hesitate to label Ms. Hevener's conduct as being similar to Mark Robert Heinrich's).

### f. §3553(a)(7) – The Need to Provide Restitution to Any Victims of the Offense

No restitution is being sought in this case.

### g. Multiple §3553(a) Factors

Courts have the ability to vary from the guidelines based on a single §3553(a) factor warranting a sentence below the guideline range, however, courts may vary where a combination of §3553(a) factors makes the case unusual and so warrants a non-guidelines sentence. *See*, United States v. Arrelucea-Zamudio, 581 F.3d 142, 149 (3d Cir. 2009) (the court "has the discretion to consider variance under the totality of the §3553(a) factors (rather than one factor in isolation) on the basis of a defendant's fast-track argument and… such a variance would be reasonable in an appropriate case").

## IV. Conclusion

Ms. Hevener's has demonstrated that her case does not fall within the "heartland" of §2251(a) cases that the Sentencing Commission had in mind when it drafted the guidelines for such an offense. Although this case is not ripe for a

departure, as described in the above sections, Ms. Hevener's case warrants a significant variance from the guidelines based on multiple §3553(a) factors.

Ms. Hevener respectfully request that's this Honorable Court vary downward from the advisory guidelines and sentence her to the statutory mandatory minimum of fifteen (15) years' incarceration.

**RESPECTFULLY SUBMITTED**, this 23rd day of January 2025.

*s/ Joseph Price*
Joseph G. Price, Esq.
PA Atty. ID No. 317300
Attorney for Mykayliah Hevener

Law Offices of Joseph G. Price, Esq.
321 Pear Street
Scranton, PA 18505
570-955-7418
jprice@joepriceesq.com